UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
In re:

BB 23 Hollow Ridge LLC,

                                    Debtor.
--------------------------------------------------------------x

Hearing Date and Time:
April 9, 2025 at 10:00 a.m.

Chapter 11

Case No. 24-22310-SHL

## NOTICE OF HEARING TO CONSIDER THE
## DEBTOR'S MOTION FOR ORDER PURSUANT
## TO 11 U.S.C. §§ 361 AND 363 AUTHORIZING USE OF
## CASH COLLATERAL AND PROVIDING ADEQUATE PROTECTION

PLEASE TAKE NOTICE, that upon the annexed application, the debtor herein, BB 23 Hollow Ridge LLC (the "Debtor"), will move at a hearing to be held before the Honorable Sean H. Lane, U.S. Bankruptcy Court, 300 Quarropas Street, White Plains, NY 10601 on April 9, 2025 at 10:00 a.m. (the "Hearing") for an Order authorizing the Debtor to use cash collateral grant adequate protection and replacement liens to its secured lender, U.S. Bank Trust National Association as Owner Trustee for RCF 2 Acquisition Trust pursuant to Sections 361 and 363 of title 11 of the United States Code.

PLEASE TAKE FURTHER NOTICE that the Hearing shall not be held in person but shall be held by video via the Zoom platform. Those intending to appear at the Hearing must register with eCourt Appearances no later than two days prior to the Hearing. The phone number or video link for the Hearing will be emailed only to those that register with eCourt Appearances in advance of the Confirmation Hearing. Instructions for registering with eCourt Appearances can be found at  https://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl.  Anyone requiring assistance may contact the Zoom help center at https://support.zoom.us/hc/en-us.

PLEASE TAKE FURTHER NOTICE, that objections, if any, to the relief requested shall be filed in writing with the Clerk of the Bankruptcy Court through the Bankruptcy Court's electronic case filing system on or before April 2, 2025.

Dated: New York, New York
          March 11, 2025

                              Goldberg Weprin Finkel Goldstein, LLP
                              Attorneys for the Debtor
                              125 Park Avenue, 12th Floor
                              New York, New York 10017

                              By:      /s/ J. Ted Donovan, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re:                                                          Chapter 11

BB 23 Hollow Ridge LLC,                                         Case No. 24-22310-SHL
                                    Debtor.
-------------------------------------------------------------x

## DEBTOR'S MOTION FOR ORDER PURSUANT
## TO 11 U.S.C. §§ 105(a), 361, AND 363 AUTHORIZING USE OF
## CASH COLLATERAL AND PROVIDING ADEQUATE PROTECTION

BB 23 Hollow Ridge LLC (the "Debtor") submits this motion (the "Cash Collateral Motion") pursuant to Sections 105(a), 361, and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code") seeking approval authorizing the Debtor to (i) use cash collateral (the "Cash Collateral") of U.S. Bank Trust National Association as Owner Trustee for RCF 2 Acquisition Trust (the "Lender"); and (ii) to grant adequate protection and replacement liens to the Lender pursuant to the attached proposed stipulation authorizing the Debtor to use the Cash Collateral, annexed hereto as Exhibit "A" (the "Cash Collateral Order"). In support of the Cash Collateral Motion and entry of the Cash Collateral Order, the Debtor represents as follows:

### BACKGROUND

1.      On April 9, 2024 (the "Filing Date"), the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code and has continued in possession and management of its assets as a debtor-in-possession pursuant to 11 U.S.C. §§1107 and 1108.

2.      The Debtor owns certain residential development property at 23 Hollow Ridge Road, Mt. Kisco, New York consisting of approximately 21 acres, improved by one residential home with the possibility of building additional homes (the "Property"). The residential home is

1

currently occupied by Brad Zackson, the manager of the Debtor, as tenant pursuant to lease dated July 1, 2023 as modified, with a $16,000 per month rent (the "Rent").

3.      The main goal of the Chapter 11 filing is to protect the Property while the Debtor seeks to challenge on appeal an adverse judgment of foreclosure entered prior to the Filing Date. To this end, simultaneously with the filing of this Motion, the Debtor is filing a stipulation between the Debtor and the Lender vacating the stay for the purpose of permitting the appeal to go forward.

4.      In the meantime, the Debtor has agreed with the Lender to provide certain protections to the Lender, including a lien on all post-petition rents received by the Debtor, the making of monthly adequate protection payments in a fixed amount, and the commencement of efforts to refinance or sell the Property in the event that the appeal is unsuccessful.

5.      Accordingly, the Debtor and the Lender negotiated the Cash Collateral Order which sets forth all relevant terms and conditions of the Debtor's use of cash predicated upon an agreed budget.

6.      The sole source of revenue to operate the Property derives from the Debtor's collection of monthly rents from the Mr. Zackson as the sole residential tenant.  There is no doubt that ongoing rent collections constitute the Lender's Cash Collateral within the meaning of the Bankruptcy Code.  Fundamentally, the Cash Collateral Order permits the Debtor's use of the rents to operate the Property.  It contains customary operating expenses with all excess operating funds to be remitted to the Lender as adequate protection.

## SPECIFIC PROVISIONS OF THE CASH COLLATERAL STIPULATION[1]

7.      Consistent with the requirements of Local Rule 4001-2, the following section

outlines the major provisions and aspects of the Cash Collateral Order.

(i)     The amount of cash collateral is fixed at the monthly rent of the sole tenant, or $16,000 per month.

(ii)    material conditions to use of cash collateral: Payment of adequate protection for the Debtor's use of Cash Collateral in the amount of $10,000 per month, plus the grant of a replacement lien on the Cash Collateral, along with approval of a negotiated Budget covering, *inter alia*, the payment of real estate taxes.

(iii)   pricing and economic terms, including letter of credit fees, commitment fees, any other fees, and the treatment of costs and expenses of the lender(s), any agent for the lender(s), and their respective professionals:   Not applicable to the Cash Collateral Order.

(iv)    any effect on existing liens of the granting of collateral or adequate protection provided to the lender(s) and any priority or superpriority provisions: The Lender's mortgage liens and security interests are deemed valid, binding, perfected, duly recorded and enforceable.

(v)     any Carve-Outs from liens or superpriority claims:   There is a $10,000 carve-out for burial expenses that are permitted to be incurred following conversion of the case to Chapter 7.

(vi)    any cross-collateralization or other provision that elevates prepetition debt to administrative expense (or higher) status or that secures prepetition debt with liens on postpetition assets (which liens the creditor would not otherwise have by virtue of the prepetition security agreement or applicable law):  None.

(vii)   any rollup or other provision that applies the proceeds of postpetition financing to pay, in whole or in part, prepetition debt or which otherwise has the effect of converting prepetition debt to postpetition debt: None.

(viii)  any provision that would limit the Court's power or discretion in a material way, or would interfere with the exercise of the fiduciary duties, or restrict the rights and powers, of the debtor in possession, or any other fiduciary of the estate, in connection with the operation, financing, use or sale of the Property of the estate. None.

---

[1] In the event of a conflict between the summary provided below of the Cash Collateral Order and the express terms of the Cash Collateral Order, the express terms of the Cash Collateral Order shall govern.

(ix)     any terms that provide that the use of cash collateral will cease on (i) the filing of a challenge to the lender's prepetition lien or the Lender's prepetition claim based on the Lender's prepetition conduct; (ii) entry of an order granting relief from the automatic stay other than an order granting relief from the stay with respect to material assets; (iii) the grant of a change of venue with respect to the case or any adversary proceeding; (iv) management changes or the departure, from the debtor, of any identified employees; (v) the expiration of a specified time for filing a plan; or (vi) the making of a motion by a party in interest seeking any relief (as distinct from an order granting such relief): Yes, the Cash Collateral Order is subject to invocation of default rights.

(x)     any change-of-control provisions: None.

(xi)    any provision establishing a deadline for, or otherwise requiring, the sale of property of the estate:  None.

(xii)   any prepayment penalty, termination fee or other provision that affects the debtor's right or ability to repay the financing in full during the course of the chapter 11 case: None.

(xiii)  any provision for the funding of non-debtor affiliates with cash collateral or proceeds of the loan, as applicable, and the approximate amount of such funding: None.

(xiv)   provisions that require the debtor to pay an agent's or lender's expenses and attorneys' fees in connection with the proposed financing or use of cash collateral, without any notice or review by the Office of the United States trustee, the committee appointed under Bankruptcy Code § 1102 (if formed), or, upon objection by either of the foregoing parties, the Court: None.

(xv)    provisions for termination of the automatic stay on less than seven (7) days' notice to the Debtor and U.S. Trustee.  None

(xvi)   Provisions relating to investigation periods relating to waivers and concessions as to prepetition debt:  None.

4

**Use of Cash Collateral Is Necessary and Appropriate to Operate the Property**

8.    The Debtor requires use of Cash Collateral to pay its ordinary operating expenses in connection with the operation of the Property, including taxes and insurance.  A proposed operating budget is annexed to the Stipulation (the "Budget").

9.    Section 363(c) of the Bankruptcy Code governs the use of cash collateral and provides, in pertinent part, that: The trustee [or DIP] may not use, sell, or lease cash collateral…unless- (A) Each entity that has an interest in such cash collateral consents; or (B) The court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section. 11 U.S.C. § 363(c). Further, § 363(e) provides that "on request of an entity that has an interest in property…proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e).

**Adequate Protection Will Be Given to the Lender**

10.    Section 363(c)(2) of the Bankruptcy Code provides that the Debtor may not use cash collateral unless the Lender consents or the Court, after notice and a hearing, authorizes the use of cash collateral.

11.    The use of rental income to preserve and enhance property in Chapter 11 alone can constitute adequate protection. *See, In re 499 W. Warren Street Assoc., Ltd.*, 142 B.R. 53, 56 (Bankr. N.D.N.Y. 1992); *In re Constable Plaza Assoc.*, 125 B.R. 98 (S.D.N.Y. 1991); *In re Rancourt*, 123 B.R. 143 (Bankr. D.N.H. 1991). In *In re Pine Lake Village Apartment Co.*, 16 B.R. 750 (Bankr. S.D.N.Y 1982), the late Judge Schwartzberg noted that the application of rental income to maintain and repair the debtor's property so as to prevent further deterioration will enhance the value of the property which serves as collateral for the mortgagee's claim. The Court

further stated that the protection and maintenance of the mortgagee's collateral, without any diversion of funds to the debtor, clearly ensures that the "mortgagee's investment is adequately protected." Similarly, in *In Re Prichard Plaza Assoc., L.P.*, 84 B.R. 289, 301-302 (Bankr. D.Mass 1988), the Bankruptcy Court was of the view that "to the extent that the debtor applies rental income to the operation and maintenance of the property, the mortgagee may be considered adequately protected."

12.    Here, the Debtor proposes to use the rents to operate and maintain the Property, and to make monthly payments to the Lender as adequate protection.

**NOTICE AND REQUEST FOR A PRELIMINARY AND FINAL HEARING**

13.    While a motion to approve the use of Cash Collateral on a final basis requires at least fourteen (14) days' notice, Bankruptcy Rule 4001(b)(2) authorizes the Court to conduct a preliminary hearing to avoid immediate and irreparable harm to the Debtor's estate pending a final hearing. Here, the Debtor does not need a preliminary hearing and is moving on at least fourteen (14) days' notice for a single hearing to address all cash collateral issues at the same time.

14.    In accordance with the Bankruptcy Rules, the Debtor shall provide notice of this Motion by regular mail to (i) the Office of the United States Trustee; (ii) the Lender through its counsel; (iii) all known creditors; and (iv) all persons who filed notices of appearance with the Clerk of the Court.

**WHEREFORE**, the Debtor respectfully prays for the entry of the Cash Collateral Order

together with such other relief as may be just and proper.

Dated: New York, New York
       March 11, 2025

GOLDBERG WEPRIN
FINKEL GOLDSTEIN LLP
*Attorneys for the Debtor*
125 Park Avenue, 12th Fl.
New York, New York   10017
(212) 221-5700


By:     /s/ J. Ted Donovan

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re:                                                                          Chapter 11

BB 23 Hollow Ridge LLC,                                          Case No. 24-22310-SHL

                                                    Debtor.
-------------------------------------------------------------x

## STIPULATION OF SETTLEMENT AUTHORIZING
## THE DEBTOR'S USE OF CASH COLLATERAL

The Debtor herein, BB 23 Hollow Ridge LLC (the "Debtor") and U.S. Bank Trust

National Association as Owner Trustee for RCF 2 Acquisition Trust (the "Lender") have reached

this settlement relating to the allowance and treatment of the Lender's secured claim and now are

in a position to stipulate to the use of cash collateral on the following terms and conditions:

## RECITALS

A.      On April 9, 2024 (the "Petition Date"), the Debtor filed a voluntary petition for

relief under Chapter 11 of title 11, United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy

Code"), and thereafter has continued to operate as a debtor-in-possession pursuant to Sections

1107 and 1108 of the Bankruptcy Code.

B.      This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157(b)

and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).

C.      The Debtor owns certain residential development property at 23 Hollow Ridge

Road, Mt. Kisco, New York consisting of approximately 21 acres, improved by one residential

home with the possibility of building additional homes (the "Property").  The residential home is

currently occupied by Brad Zackson, the manager of the Debtor, as tenant pursuant to lease dated

July 1, 2023 as modified, with a $16,000 per month rent (the "Rent").

D.      The Lender asserts a first mortgage lien and security interest against the Property to secure a loan in the principal sum of $2,345,000.

E.      In connection with a pre-petition foreclosure action commenced by the Lender in the Supreme Court, Westchester County (Index 63629/2019), on January 11, 2024 the Lender obtained a judgment of foreclosure in the amount of $2,922,390.68 plus interest.

F.      The Debtor has filed appeals from the judgment which are pending before the Second Department under Docket Nos. 2024-02376 and 2024-02378, challenging, *inter alia*, the Lender's standing vis-à-vis the MERS filing system, alleged title defects in the chain of mortgage assignments and the Lender's alleged failure to comply with applicable residential foreclosure practices and protocols (the "Appeals").

G.      To the extent that it is ultimately found to be valid and enforceable, the Lender's mortgage lien covers, among other things, the Debtor's pre-petition and post-petition Rent, which the Debtor acknowledges constitutes the Lender's "cash collateral" within the meaning of Bankruptcy Code § 363(a).

H.      Pursuant to Bankruptcy Code § 363(c)(3), the Debtor cannot use the Cash Collateral without the consent of the Lender or an Order of the Bankruptcy Court.

I.      The Debtor reasonably believes that the value of its estate will be enhanced by the use of Cash Collateral to pay debt service and real estate taxes.

J.      The Lender is entitled to receive adequate protection in respect to the Debtor's use of Cash Collateral.

**NOW, THEREFORE,** it is Stipulated and Ordered as follows:

1.      Incorporation of Recitals. The foregoing recitals "A" through "J" are hereby incorporated by this reference and made a part of this Order.

2.      <u>Effectiveness of Order</u>. This Order shall be effective immediately upon the entry hereof.

3.      <u>Reservation of Rights Relating to the Lender's Secured Claim</u>.   The Debtor and the Lender agree that as of the Petition Date, and based upon the judgment of foreclosure, the Lender shall be treated as holding a secured mortgage lien against the Property and the Rent, subject to the pending Appeals.   Accordingly, subject to the Appeals, the Lender shall receive a replacement lien on the Debtor's post-petition and post-confirmation Rents during the term of the Chapter 11 case.

4.      <u>Authorization to Use Cash Collateral</u>.   Subject to the terms and conditions of this stipulation, pursuant to Bankruptcy Code § 363(c)(2), the Debtor is authorized to use the Cash Collateral through confirmation of a plan.

5.      <u>Adequate Protection Lien</u>. As adequate protection against and to the extent of any diminution in value of the Lender's interest in Cash Collateral pending confirmation of a plan, and subject to the Appeals, the Lender is hereby granted (without the necessity of the execution, recording or filing of additional mortgages, security agreements, pledge agreements, financing statements or other documents) a continuing replacement lien and security interest covering the Cash Collateral, except that the Lender's interest in Cash Collateral shall not include the Debtor's avoidance claims and causes of action under Bankruptcy Code §§ 544, 545, 547, 548, 549 or 550 (collectively, the "<u>Avoidance</u> <u>Actions</u>"), and additionally, shall be subject to a Carve Out (defined below).   The Debtor shall be authorized to collect Rents receivable pursuant to the terms hereof to be paid in accordance herewith.

6.      <u>Perfection of Interest in Cash Collateral</u>. This Order shall be sufficient and conclusive evidence of the Lender's interest in Cash Collateral (both pre-petition and post-

3

petition) without the necessity of filing or recording of any UCC-1 financing statement or other instrument or document which may otherwise be required under state law.

7.      Adequate Protection Payments. As adequate protection for the use of Cash Collateral, the Debtor shall pay the Lender the sum of $10,000 per month prior to confirmation of a plan to be applied to reduce the Secured Claim with the first payment beginning on June 10, 2024.  Immediately upon the execution of this Stipulation, the Debtor shall pay all outstanding payments to counsel to the Lender, who shall hold the funds in escrow pending entry of an Order approving this Stipulation, whereupon the funds shall be released to the Lender.  Thereafter, the Debtor shall continue regular monthly payments on the tenth day of each month following the entry of an Order approving this Stipulation.  The adequate protection payments shall be allocated first to interest and then to principal each month.  Upon entry of an Order approving this Stipulation, the Debtor shall reimburse the Lender for all post-petition advances for, among other things, insurance and taxes, in an amount to be agreed between the parties but in no event more than $40,000.

8.      Further Obligations. The Debtor shall perform the following additional obligations:

(a)      Utilize Cash Collateral and Cash to pay the accrued and future expenses of operating the Debtor's business in accordance with the proposed budget annexed hereto (the "Budget"), including maintaining insurance and timely payment of all real estate taxes, which shall be paid directly by the Debtor through confirmation of a plan; and

4

(b)     Account for the expenditures of Cash Collateral as part of the Debtor's monthly operating reports to be filed with the Bankruptcy Court in accordance with the guidelines of the United States Trustee.

9.      Events of Default. The occurrence of any of the following events, unless waived by the Lender in writing, shall constitute an event of default if not cured after ten (10) days written notice to the Debtor and its counsel (collectively, the "Events of Default"):

(a)     The Debtor's failure to materially perform any of the terms, provisions, and covenants under this Order including payments in excess of budgeted items (subject to a variance of ten (10%) per item) without further Order of the Court or consent of the Lender;

(b)     The Debtor's failure to file monthly operating reporting as required by the US Trustee guidelines by the end of month following each calendar month reporting period; and

(c)     A default by the Debtor in paying monthly adequate protection payment of $10,000 to the Lender on the tenth (10th) day of each month pending confirmation of the Plan.

10.     Rights and Remedies upon Event of Default. After the occurrence of an uncured Event of Default, the Lender may declare a termination of the Debtor's right to use Cash Collateral by delivering to the Debtor a "Termination Declaration" which shall become effective after five (5) business days thereafter (the "Termination Date"); except that the Debtor shall be entitled to file a motion for an emergency hearing with the Court to show cause why the authorization to use Cash Collateral should continue.  Unless the Court determines otherwise, upon the Termination Date, (i) the Debtor shall no longer have the right to use Cash Collateral;

and (ii) the Lender shall be permitted to seek applicable relief from the Bankruptcy Court to exercise all other rights and remedies set forth herein.

11.   <u>Carve Out</u>. The rights, claims and interests of the Lender in the Cash shall be subordinate to the costs of administrative burial expenses not to exceed $10,000 in the event of a conversion of the Debtor's Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code (the "<u>Carve Out</u>").

12.   <u>No Liability to Third Parties</u>. In authorizing the Debtor's use of Pre-Petition Cash Collateral or the Potential Post-Petition Cash Collateral under the terms set forth herein in this Order, the Lender (i) shall have no liability to any third party and shall not be deemed to be in control of the operations of the Debtor or to be acting as a "controlling person," "responsible person" or "owner or operator" with respect to the operation or management of the Debtor (as such term, or any similar terms, are used in the Internal Revenue Code, the United States Comprehensive Environmental Response, Compensation and Liability Act, as amended, or any similar Federal or state statute), and (ii) shall not owe any fiduciary duty to the Debtor, its creditors or its bankruptcy estate.

13.   <u>Retention of Jurisdiction</u>. This Court shall retain jurisdiction to enforce this Order and determine any dispute arising hereunder.

14.   <u>Counterparts</u>.  This Stipulation may be executed in one or more counterparts with pdf and/or facsimile signatures deemed to be originals.

*[Signatures On Following Page]*

6

Dated: New York, NY
      February 28, 2025

| | |
|---|---|
| Robertson, Anschutz, Schneid, Crane & Partners PLLC | Goldberg Weprin Finkel Goldstein LLP |
| *Attorneys for the Lender* | *Attorneys for the Debtor* |
| 900 Merchants Concourse, Suite 310 | 125 Park Avenue, 12th Floor |
| Westbury, NY 11590 | New York, NY 10017 |
| By:  /s/ Kevin R. Toole, Esq. | By;  /s/ J. Ted Donovan, Esq. |

So Ordered this __ day of March, 2025

_____
Sean H. Lane
U.S. Bankruptcy Judge

**BB 23 Hollow Ridge LLC**

Cash Collateral Budget

| Monthly | Actual July | Actual August | Actual September | Actual October | Actual November | Budgeted December | Budgeted January 2025 | Budgeted February | Budgeted March | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| **Cash Receipts** | | | | | | | | | | |
| Owner Contribution | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $35,000.00 | $0.00 | $0.00 | $35,000.00 |
| Residential Rental Income | $17,600.00 | $14,600.00 | $16,000.00 | $16,000.00 | $0.00 | $32,000.00 | $16,000.00 | $16,000.00 | $16,000.00 | $96,200.00 |
| **Total Cash Receipts** | **$17,600.00** | **$14,600.00** | **$16,000.00** | **$16,000.00** | **$0.00** | **$32,000.00** | **$51,000.00** | **$16,000.00** | **$16,000.00** | **$131,200.00** |
| | | | | | | | | | | |
| **Operating Disbursements** | | | | | | | | | | |
| Adequate Protection Payments (accruing pending stipulation) | $10,000.00 | $10,000.00 | $10,000.00 | $10,000.00 | $10,000.00 | $10,000.00 | $10,000.00 | $10,000.00 | $10,000.00 | $60,000.00 |
| Insurance | $2,347.00 | $1,275.00 | $1,275.00 | $1,300.00 | $1,274.00 | $1,274.00 | $1,274.00 | $1,274.00 | $1,274.00 | $8,745.00 |
| Real Estate Taxes (accruing through January, 2025) | $4,000.00 | $4,000.00 | $4,000.00 | $4,000.00 | $4,000.00 | $4,000.00 | $35,000.00 | $4,000.00 | $4,000.00 | $24,000.00 |
| Administrative Fees | $3.00 | $3.00 | $0.00 | $110.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $116.00 |
| **Total Operating Disbursements** | **$16,350.00** | **$15,278.00** | **$15,275.00** | **$15,410.00** | **$15,274.00** | **$15,274.00** | **$46,274.00** | **$15,274.00** | **$15,274.00** | **$92,745.00** |
| | | | | | | | | | | |
| **Bankruptcy Disbursements** | | | | | | | | | | |
| Professional Fees | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| U.S. Trustee Fees | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $250.00 | $0.00 | $0.00 | $0.00 |
| **Total Bankruptcy Disbursements** | **$0.00** | **$0.00** | **$0.00** | **$0.00** | **$0.00** | **$0.00** | **$250.00** | **$0.00** | **$0.00** | **$0.00** |
| | | | | | | | | | | |
| **Net Cash Flow** | **$1,250.00** | **-$678.00** | **$725.00** | **$590.00** | **-$15,274.00** | **$16,726.00** | **$4,476.00** | **$726.00** | **$726.00** | **$38,455.00** |
| | | | | | | | | | | |
| Cash, beginning | $16,052.00 | $17,302.00 | $16,624.00 | $17,349.00 | $17,939.00 | $2,665.00 | $19,391.00 | $23,867.00 | $24,593.00 | $16,052.00 |
| **Cash, ending** | **$17,302.00** | **$16,624.00** | **$17,349.00** | **$17,939.00** | **$2,665.00** | **$19,391.00** | **$23,867.00** | **$24,593.00** | **$25,319.00** | **$165,049.00** |